UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------- x
CAESAR MANIGAULT                                :
                                                :   Case No. 17 Civ. 7375 (AT)(KNF)
                Plaintiff,         :
                                                :
        v.                              :
                                                :
ABC, INC.,                                      :
                                                :
                Defendant.         :
                                                :
                                                :
                                                :
---------------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1
FACTUAL BACKGROUND .......................................................................................................... 1
ARGUMENT ................................................................................................................................... 3
    A. Plaintiff's Lanham Act Claims Should Be Dismissed. ..........................................................4
        1. The Complaint Fails to Plausibly Allege a Likelihood of Confusion. ..........................4
        2. Plaintiff's Lanham Act Claims Are Barred by the First Amendment. .........................6
        3. Plaintiff's State Law Claims Also Fail. .......................................................................8
    B. Plaintiff Fails To State a Claim for Copyright Infringement. ..............................................9
        1. The Purpose and Character of ABC's Use Favors Finding Fair Use. .........................10
        2. The Nature of the Copyrighted Work Is at Most Neutral. ..........................................12
        3. The Amount and Substantiality of the Portion Used Weighs in Favor of Fair Use. ...............................................................................................................................13
        4. The Effect of the Use Upon the Market Weighs in Favor of Fair Use. .......................13
CONCLUSION ............................................................................................................................. 14

4823-2084-4885v.7 0019918-000041

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. GEO USA LLC*,
  No. 14-cv-7486(JMF), 2015 WL 1408895 (S.D.N.Y. Mar. 27, 2015)......................................4

*Applied Underwriters Inc. v. Lichtenegger*,
  No. 215CV02445TLNCKD, 2017 WL 2881517 (E.D. Cal. July 6, 2017) ..............................6

*Arica Inst., Inc. v. Palmer*,
  970 F.2d 1067 (2d Cir. 1992)..................................................................................................10

*Associated Press v. All Headline News Corp.*,
  608 F. Supp. 2d 454 (S.D.N.Y. 2009)......................................................................................4

*Bill Graham Archives v. Dorling Kindersely Ltd.*,
  448 F.3d 605 (2d Cir. 2006)....................................................................................................11

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006)..............................................................................................10, 12

*Boule v. Hutton*,
  328 F.3d 8 (2d Cir. 2003).........................................................................................................8

*Brown v. Electronic Arts*,
  724 F.3d 1235 (9th Cir. 2013) .................................................................................................6

*Burnett v. Twentieth Century Fox Film Corp.*,
  491 F. Supp. 2d 962 (C.D. Cal. 2007) ...................................................................................10

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569, 114 S.Ct. 1164 (1994).........................................................................10, 11, 12

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013)................................................................................................9, 13

*Castle Rock Ent'mnt v. Carol Pub. Group*,
  150 F.3d 132 (2d Cir. 1998)....................................................................................................12

*Chambers v. Time
  Warner, 282 F.3d 147 (2d Cir. 2002).......................................................................................1

*Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Group*,
  886 F.2d 490 (2d Cir. 1989)......................................................................................................6

4823-2084-4885v.7 0019918-000041

*Coach, Inc. v. Horizon Trading USA*,
    908 F.Supp.2d 426 (S.D.N.Y. 2012) ................................................................................... 8

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ........................................................................................... 7

*Empresa Cubana del Tabaco v. Culbro Corp.*,
    399 F.3d 462 (2d Cir. 2005) ............................................................................................... 9

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ............................................................................ 4, 5

*Hofheinz v. A & E Television Networks, Inc.*,
    146 F. Supp. 2d 442 (S.D.N.Y.2001) ............................................................................... 12

*Hofheinz v. AMC Prods., Inc.*,
    147 F. Supp. 2d 127 (E.D.N.Y. 2001) ............................................................................. 11

*Hofheinz v. Discovery Commc'ns, Inc.*,
    No. 00 Civ. 3802(HB), 2001 WL 1111970 (S.D.N.Y. Sept. 20, 2001) ............................ 12

*Int'l Audiotext Network, Inc. v. Am. Telephone & Telegraph Co.*,
    62 F.3d 69 (2d Cir.1995) .................................................................................................... 1

*Int'l Information Sys. Sec. Cert. Cons., Inc. v. Sec. Uni., LLC*,
    823 F.3d 153 (2d Cir. 2016) ........................................................................................... 5, 6

*Kane v. Comedy Partners*,
    No. 00 Civ. 158(GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003), *aff'd*
    98 F. App'x. 73 (2d Cir. 2004) ........................................................................................ 11

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) ........................................................................................... 12

*Konangataa v. American Broadcasting Cos., Inc.*,
    2017 WL 2684067 (S.D.N.Y) ............................................................................................ 9

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ........................................................................................... 10

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998) ............................................................................................. 13

*Levingston v. Earle*,
    No. CV-12-08165-PCT-JAT, 2014 WL 1246369 (D. Ariz. Mar. 26, 2014) ................... 10

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
    No. 16-cv-9974, 2017 WL 4129643 (Sept. 15, 2017 S.D.N.Y.) ........................................ 6

iii

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*
  868 F. Supp. 2d 172 (S.D.N.Y. 2012)..................................................................................5, 7

*Medina v. Dash Films, Inc.*,
  15-cv-2551(KBF), 2016 WL 3906714 (S.D.N.Y. July 14, 2016) .......................................7, 8

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014).....................................................................................................4

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004), *cert. denied*, 543 U.S. 1000, 125 S. Ct. 607
  (2004) ...............................................................................................................................10, 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ................................................................................................................9

*Prod. Contractors, Inc. v. WGN Cont'l Broad. Co.*,
  622 F. Supp. 1500 (N.D. Ill. 1985) ..........................................................................................5

*Righthaven LLC v. Realty One Grp., Inc.*,
  No. 2:10-cv-1036-LRH-PAL, 2010 WL 4115413 (D. Nev. Oct. 19, 2010)...........................10

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989)..................................................................................................6, 7

*Savage v. Council on American–Islamic Relations, Inc.*,
  No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) .........................................10

*Scott v. WorldStarHipHop, Inc.*,
  No. 10 Civ. 9538 (PKC)(RLE), 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011),
  *vacated on other grounds by* 2011 WL 13079877 (S.D.N.Y. Dec. 12, 2011).........................9

*Sly Magazine v. Weider Publications L.L.C.*,
  346 F. App'x 721 (2d Cir. 2009) .............................................................................................8

*Smartix Intern. Corp. v. MasterCard Intern. LLC*,
  No. 06-cv-5174 (GRB), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ..................................8

*Swatch Group Mgmt. Serv. V. Bloomberg, L.P.*,
  756 F.3d 73 (2d Cir. 2014).....................................................................................................12

*Tactica Intern., Inc. v. Atlantic Horizons Intern., Inc.*,
  154 F. Supp. 2d 586 (S.D.N.Y. 2001).....................................................................................4

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016).....................................................................................................9

*Twin Peaks v. Publications Intern., Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)..................................................................................................7

*Universal City Studios, Inc. v. Ideal Pub. Corp.*,
    No. 77-CV-4508, 1977 WL 25614 (S.D.N.Y. 1977).................................................................5

*Vedder Software Group Ltd. v. Insurance Servs. Offices, Inc.*,
    2013 WL 12121098 (N.D.N.Y. Mar. 22, 2013) ......................................................................8

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
    No. 98 Civ. 7128(BSJ), 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) .............................11, 14

*Wade Williams Distribution, Inc. v. Am. Broad. Co., Inc.*,
    No. 00 Civ. 5002(LMM), 2005 WL 774275 (S.D.N.Y. Apr. 5, 2005)....................................11

*WCVB-TV v. Boston Athletic Ass'n*,
    926 F.2d 42 (1st Cir. 1991)....................................................................................................5

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991)..................................................................................................10

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) .......................................................................................6, 7

**Statutes**

17 U.S.C. § 107.................................................................................................................10, 13

N.Y. Debtor and Creditor Law § 276 ........................................................................................9

**Other Authorities**

Fed. R. Civ. 12(b)(6)..................................................................................................................1

Fed. R. Civ. 12(c).....................................................................................................................10

4823-2084-4885v.7 0019918-000041

Defendant ABC, Inc. ("ABC") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint in this action, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. 12(b)(6).

## PRELIMINARY STATEMENT

ABC owns local television station WPVI-TV in Philadelphia, also commonly referred to as 6abc, which broadcasted a consumer news report reviewing the pros and cons of services that offer the ability to scan keys so that duplicates can then be mailed to the consumer. Plaintiff claims to own one such business, called KeyiCam, whose logo and webpage was displayed briefly, for about one second, as part of ABC's news report. Though Plaintiff's Complaint is often unintelligible,[1] Plaintiff appears to allege that ABC infringed his intellectual property by showing the KeyiCam website, including the logo, on the 6abc news report. For a host of reasons – failure to plausibly allege the elements of his claims, the doctrine of fair use, and the First Amendment – Plaintiff's effort to make a federal case out of one-second of routine news reporting fails to state a claim.

## FACTUAL BACKGROUND

Plaintiff's claims arise from a consumer news segment that was broadcast on 6abc's "Action News" program on or about March 15, 2015. Compl. ¶ 1. The segment, reported by journalist Nydia Han, lasted roughly three and a half minutes.[2] It reviewed the phenomena of smartphone applications (referred to herein as "app" or "apps") that allow consumers to create

---

[1] The Complaint is replete with irrelevant and incomprehensible allegations that do not warrant response here. For instance, Plaintiff, among other things, discusses his tax deductions and alleges thefts by a vague conspiracy of unnamed persons who supposedly tampered with the deposit box at the Copyright Office in Washington D.C.(Compl., p. 9). None of this has any connection with stating a claim against ABC.

[2] *See* Declaration of L. Danielle Toaltoan, dated November 22, 2017 ("Toaltoan Decl."), ¶ 4 and **Exhibit A**. Since the Complaint repeatedly refers to, and indeed attaches a screenshot from the report, it may properly be considered on a motion to dismiss since it is incorporated by reference in the Complaint. *See Chambers v. Time* Warner, 282 F.3d 147, 152 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Telephone & Telegraph Co.,* 62 F.3d 69, 72 (2d Cir.1995).

and store virtual copies of their keys – digital copies which can then be used to order physical duplicates of the keys if they are lost.

The report focused almost entirely on one such service called KeyMe, which is not Plaintiff's service. The segment explained how the KeyMe app works, and performed several tests on how well it works – some were successful, while one was not. To illustrate, the report briefly displayed an image of KeyMe's packaging:



Roughly one minute and forty-nine seconds into the report, Ms. Han noted that there are other businesses that also provide similar key duplication services, stating: "KeyMe is not the only game in town. There is also Keys Duplicated and KeyiCam." As she mentioned the names of the other two services, a screenshot from each business's website was displayed on the screen for about a second each:



2

4823-2084-4885v.7 0019918-000041



The segment then reported that some security experts and traditional locksmiths think these services can present a safety risk compared to traditional locks and key duplication mechanisms. It interviewed a locksmith who offered that perspective. Finally, the segment interviewed a representative from KeyMe, who opined that the service is safe.

ABC also posted an article on the 6abc website summarizing the news report. The article does not include any pictures, but included hyperlinks to the websites of each of the companies mentioned in the report.[3]

Plaintiff initiated this action *pro se* on September 27, 2017. The Complaint references multiple conspiracies, claims loss of sales totaling $5.4 million, attaches over thirty pages of exhibits, including his tax returns, and identifies ten purported causes of action, many of which are duplicative. Ostensibly, Plaintiff alleges several violations of the Lanham Act – trademark infringement, unfair competition, false advertising, and several state-law equivalent claims – as well as copyright infringement and fraudulent conveyance.

## ARGUMENT

Put simply, the ABC report at issue is a news report, and there is no question that consumer news reports may reference and describe the products and services they report about.

---

[3] A true and correct copy of the article is attached to Toaltoan Decl. in **Exhibit B**.

3

Plaintiff's Complaint is premised on the assertion that the ABC's news report is a commercial advertisement for key duplication services. It is not, and so the Complaint must be dismissed as a matter of law.

**A.      Plaintiff's Lanham Act Claims Should Be Dismissed.**

The Complaint appears to assert various theories under Section 43(a) of the Lanham Act. However, regardless of whether they are characterized as trademark infringement, false endorsement, unfair competition, or false advertising, as applied here all of those theories require Plaintiff to plausibly plead that consumers would likely be confused about whether Plaintiff endorsed or sponsored the news report. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014); *Tactica Intern., Inc. v. Atlantic Horizons Intern., Inc.*, 154 F. Supp. 2d 586, 597 n. 14 (S.D.N.Y. 2001). No such confusion is plausible. Moreover, ABC's brief reference to Plaintiff's product for purposes of reporting about it constitutes nominative fair use, and in any event is protected by the First Amendment.

**1.      The Complaint Fails to Plausibly Allege a Likelihood of Confusion.**

Courts regularly dismiss Lanham Act claims where it is readily apparent that the Complaint fails to plausibly plead a likelihood of confusion. *See Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 462-63 (S.D.N.Y. 2009) (granting motion to dismiss trademark infringement, unfair competition and false advertising claims where plaintiff only alleged that defendant referenced its mark by stating, "[a]ccording to the AP report"); *Ahmed v. GEO USA LLC*, No. 14-cv-7486(JMF), 2015 WL 1408895, at *3 (S.D.N.Y. Mar. 27, 2015) ("[B]road statements – devoid of any factual detail – are plainly insufficient as a matter of law" to survive a motion to dismiss for failure to plausibly allege confusion) (citing cases); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (granting

4

motion to dismiss trademark infringement claim on confusion grounds where allegation of confusion "is simply not plausible.").

Here, ABC's news segment is *reporting about* the phenomena of key duplication services – including the drawbacks. KeyiCam is one of several services that are briefly referenced to inform consumers about the range of the products that are available. There is no plausible likelihood that consumers would be confused that Plaintiff sponsored, endorsed, or was otherwise associated with the news report. Even in the context of entertainment programming, courts have routinely rejected the claim that the mere presence of a trademark in a film or broadcast implies to consumers that the two are connected. *See Gottlieb*, 590 F. Supp. 2d at 635; *Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.* 868 F. Supp. 2d 172, 184 n. 19 (S.D.N.Y. 2012); *Universal City Studios, Inc. v. Ideal Pub. Corp.*, No. 77-CV-4508, 1977 WL 25614, at *2 (S.D.N.Y. 1977) (plaintiff failed to show that "public would tend to associate the defendant's magazine with the television series"); *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 46 (1st Cir. 1991) (Channel 5's use of the words "Boston Marathon" would *not* confuse the typical Channel 5 viewer) (emphasis in original); *Prod. Contractors, Inc. v. WGN Cont'l Broad. Co.*, 622 F. Supp. 1500, 1504–05 (N.D. Ill. 1985) (conclusory statements not enough to show that plaintiff's telecast of the parade will create a false impression that plaintiff is connected to defendant). Plaintiff's Lanham Act claims should be dismissed on this ground alone.

The Second Circuit recently adopted the doctrine of nominative fair use which can inform whether likelihood of confusion could be established. The doctrine of nominative fair use permits a defendant to use another person's trademark in order to describe that particular product. *Int'l Information Sys. Sec. Cert. Cons., Inc. v. Sec. Uni., LLC* , 823 F.3d 153, 168 (2d Cir. 2016). A nominative fair use exists where (1) the product was not "readily identifiable"

5

without use of the mark; (2) the defendant used no more of the mark than necessary; or (3) the defendant did not falsely suggest he was sponsored or endorsed by the trademark holder. *Id*. Here, the news report showed Plaintiff's logo briefly, along with other marks, solely in order to identify for viewers which key duplication services Ms. Han was talking about. Under nominative fair use, the Complaint should be dismissed. *Applied Underwriters Inc. v. Lichtenegger*, No. 215CV02445TLNCKD, 2017 WL 2881517, at *8 (E.D. Cal. July 6, 2017) (granting motion to dismiss for nominative fair use of trademark in description of seminar).

       **2.**       **Plaintiff's Lanham Act Claims Are Barred by the First Amendment.**

Even if there was a likelihood of confusion, which there is not, Plaintiff's trademark claims should be dismissed because they are barred by the First Amendment. In *Rogers v. Grimaldi*, the Second Circuit recognized that there are instances where the interests of the First Amendment "so outweigh[]" the risk of likelihood of confusion that the First Amendment precludes application of the Lanham Act. 875 F.2d 994, 1001 (2d Cir. 1989). As a result, *Rogers* articulated a two-part test that must be applied whenever an allegedly unauthorized use of a trademark is used in an expressive work. *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992). Under *Rogers*, the use of a trademark in an expressive work is constitutionally protected unless it (1) "has no artistic relevance to the underlying work whatsoever" or (2) "explicitly misleads as to the source or the content of the work." *Rogers*, 875 F.2d at 999. The test applies broadly to "any case where an expressive work is alleged to infringe a trademark" under any theory, be it labeled false endorsement, "false advertising", or something else. *Cliff Notes, Inc. v. Bantam Doubleday Dell Pub. Group*, 886 F.2d 490, 494 (2d Cir. 1989). Courts in this and other jurisdictions have regularly applied the *Rogers* test at the motion to dismiss stage to determine that trademark-based claims are barred by the First Amendment. *See, e.g.*, *Brown v. Electronic Arts*, 724 F.3d 1235 (9th Cir. 2013); *Lombardo v.*

*Dr. Seuss Enterprises, L.P.*, No. 16-cv-9974, 2017 WL 4129643, at *10 (Sept. 15, 2017 S.D.N.Y.); *Medina v. Dash Films, Inc.*, 15-cv-2551(KBF), 2016 WL 3906714, at *5 (S.D.N.Y. July 14, 2016) ("[c]ontrary to plaintiff's arguments, determination of these standards is not premature at this stage," and granting motion to dismiss); *Louis Vuitton*, 868 F. Supp. 2d at 183 (rejecting plaintiff's argument that "the *Rogers* test cannot be assessed on a motion to dismiss" and dismissing case). Applying the test here, ABC's news report qualifies as an "expressive work" to which Plaintiff's claims of trademark infringement and false advertising claims do not apply. *Yankee Pub. Inc.*, 809 F. Supp. at 276 (Rogers test applies to "news reporting and commentary").

First, ABC's use of the KeyiCam logo had "artistic relevance" to the report, since the logo and website illustrated an example of the key duplication services that was the very subject of the consumer news segment. *Louis Vuitton*, 868 F. Supp.2d at 178, quoting *Rogers*, 875 F.2d at 999) (emphasis in original) (the standard "will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'"); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero.").

The second stage of the *Rogers* test is "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179; *see also Twin Peaks v. Publications Intern., Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993) ("the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*"). Nothing in the news report explicitly suggested to viewers that

7

it was prepared or authorized by Plaintiff. As a result, Plaintiff's Lanham Act claims are barred by the First Amendment.

Moreover, Plaintiff's false advertising claims are barred for the additional reason that the false advertising prong of the Lanham Act only applies to commercial speech. *Boule v. Hutton*, 328 F.3d 8, 90-91 (2d Cir. 2003). News reports are not commercial speech. *Id.* at 91 ("We have little hesitation in deciding that as a matter of law the ARTnews article . . . [is] not commercial speech.").

### 3. Plaintiff's State Law Claims Also Fail.

Finally, Plaintiff's claims for unfair competition, dilution, trademark infringement and misappropriation under related state laws fail for the same reasons as his federal Lanham Act claims. Like federal trademark claims, New York trademark and unfair competition claims require a likelihood of confusion, so those claims both fail here because Plaintiff cannot plausibly allege any confusion. *See, e.g., Coach, Inc. v. Horizon Trading USA*, 908 F.Supp.2d 426, 435 (S.D.N.Y. 2012) ("The standards for trademark infringement under New York common law are essentially the same as under the Lanham Act") (internal punctuation omitted); *Sly Magazine v. Weider Publications L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009) (New York unfair competition claim requires "either actual confusion or a likelihood of confusion"); s*ee also Smartix Intern. Corp. v. MasterCard Intern. LLC*, No. 06-cv-5174 (GRB), 2008 WL 4444554, at *7 (S.D.N.Y. Sept. 30, 2008) (dismissing misappropriation claim as duplicative and similarly deficient as plaintiff's Lanham Act claims); *Vedder Software Group Ltd. v. Insurance Servs. Offices, Inc.*, 2013 WL 12121098, at * 10-11 (N.D.N.Y. Mar. 22, 2013) (dismissing misappropriation claim as duplicative of unfair competition claim). And because "[t]he same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law," *Medina*, 2016 WL 3906714, at *4, the *Rogers* analysis

8

bars Plaintiff's state law claims as well, as does the fact that the report is not commercial speech.[4] Finally, the Complaint cannot support a claim for a "fraudulent conveyance" because Plaintiff is not a creditor of ABC pursuant to N.Y. Debtor and Creditor Law § 276.

**B.      Plaintiff Fails To State a Claim for Copyright Infringement.**

Plaintiff's Complaint refers to a "common law" copyright claim, Compl. ¶ 18, a cause of action that no longer exists. But treating the allegations liberally as attempting to state a claim pursuant to the federal Copyright Act, it remains wholly devoid of merit. It is not clear what "photographs, artworks and written works" (*id*.) are purportedly registered, but whatever they might be ABC's one-second display of a portion of a web page in the context of its news report is clearly a protected fair use.

The Copyright Act specifies four non-exclusive factors that must be considered to determine whether a particular use is fair: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use on the market for the original. Moreover, it is by now well-settled that copyright infringement claims may be dismissed on fair use grounds on a motion to dismiss, where a comparison of the two works at issue is sufficient to decide the question of fair use.[5] As shown below, the four factors weigh in ABC's favor.

---

[4] This Court should also dismiss Plaintiff's unfair competition claim under New York's anti-dilution statute because Plaintiff has failed to adequately allege bad faith on ABC's part. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005). Further, Plaintiff's cause of action for deceptive practices under New York law also fails because Plaintiff must show that defendant is engaging in an act or practice that is deceptive or misleading in a material way. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). No such practice is alleged.

[5] *See, e.g.*, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) ("this court has acknowledged the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim"); *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013) (citing with approval *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (affirming dismissal of a copyright claim on fair use grounds)); *Konangataa v. American Broadcasting Cos., Inc.*, 2017 WL 2684067 (S.D.N.Y) (granting fees after dismissing complaint on fair use grounds); *Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538 (PKC)(RLE), 2011 WL 5082410, at *8 (S.D.N.Y. Oct. 25,

### 1. The Purpose and Character of ABC's Use Favors Finding Fair Use.

The first statutory factor, the purpose and character of the use, is "'[t]he heart of the fair use inquiry.'" *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (quoting *Davis v. Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001)).  Courts have developed three guidelines for applying this factor.  They are (i) whether the material was used for any of the favored purposes specifically mentioned in the statute, and (ii) whether the defendant used the material for a meaningfully different or "transformative" purpose than the original.  If so, then (iii) whether the defendant is a for-profit or non-profit entity deserves little consideration.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79, 114 S.Ct. 1164, 1171 (1994); *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004), *cert. denied*, 543 U.S. 1000, 125 S. Ct. 607 (2004).  These guidelines overwhelmingly favor a finding of fair use here, as a matter of law.

Here, whatever copyrighted material might have been displayed was for purposes of "news reporting", which is explicitly favored under the Copyright Act.  *See* 17 U.S.C. § 107.  Where a defendant's use is one of the uses identified in § 107, there will be a "strong presumption that factor one favors the defendant." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991).  *See also NXIVM Corp.*, 364 F.3d at 477 (same); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992) (same).

---

2011) (Fair use may be raised at the motion to dismiss stage if it "'appears on the face of the complaint.'" (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998))), *vacated on other grounds by* 2011 WL 13079877 (S.D.N.Y. Dec. 12, 2011); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (affirming an "assertion of fair use may be considered on a motion to dismiss, which requires the court to consider all allegations to be true, in a manner substantially similar to consideration of the same issue on a motion for summary judgment, when no material facts are in dispute"); *Savage v. Council on American–Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *4–9 (N.D. Cal. July 25, 2008) (granting Rule 12(c) motion for judgment on the pleadings based on fair use defense); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 972 (C.D. Cal. 2007) (granting defendant's motion to dismiss on fair use grounds); *Levingston v. Earle*, No. CV-12-08165-PCT-JAT, 2014 WL 1246369, at *2 (D. Ariz. Mar. 26, 2014) (dismissing *sua sponte* infringement claim on fair use grounds); *Righthaven LLC v. Realty One Grp., Inc.*, No. 2:10-cv-1036-LRH-PAL, 2010 WL 4115413, at *2 (D. Nev. Oct. 19, 2010) (same).

The most important factor in the fair use analysis is whether the secondary use was transformative. *See Bill Graham Archives v. Dorling Kindersely Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) ("Most important to the court's analysis of the first factor is the 'transformative' nature of the work."). A work is 'transformative' when the new work does not "merely supersede[ ] the objects of the original creation" but "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message . . . ." *Campbell*, 510 U.S. at 579, 114 S.Ct. at 1171. Where a different use "provide[s] a social benefit," it is more likely to be transformative. *Id.*

ABC's broadcast briefly displayed Plaintiff's work for a substantially different purpose than the original context. In *Bill Graham Archives*, the Second Circuit held that promotional posters for Grateful Dead concerts were transformed when used in a biography that informed readers about the band. 48 F.3d at 608-611. Plaintiff's logo and and webpage were created to promote a certain brand of key duplication service, that is, to "fulfill[] the dual purposes of artistic expression and promotion." *Id.* at 609. By contrast, ABC's news report displayed the KeyiCam logo and website along with other brands of key duplication services to inform consumers about various services available to them, that is, the "image display enhances the reader's understanding of the" report's subject. *Id.* at 610-11. Numerous cases have held that the brief use of video clips and stills for commentary and news reporting is transformative.[6]

---

[6] *See, e.g.*, *Wade Williams Distribution, Inc. v. Am. Broad. Co., Inc.*, No. 00 Civ. 5002(LMM), 2005 WL 774275, at *9 (S.D.N.Y. Apr. 5, 2005) (use by *Good Morning America* of brief clips from alien movies as part of reporting and commentary on the history and merits of alien films was "clearly transformative"); *Kane v. Comedy Partners*, No. 00 Civ. 158(GBD), 2003 WL 22383387, at *4 (S.D.N.Y. Oct. 16, 2003) (use of brief clip from a public access television show, accompanied by comment and ridicule on its quality, was transformative), *aff'd* 98 F. App'x. 73 (2d Cir. 2004); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 Civ. 7128(BSJ), 2001 WL 1518264, at *6 (S.D.N.Y. Nov. 28, 2001) (use of brief film clips to report on the death of the actor Robert Mitchum was transformative; the original film was intended to entertain, the news report "aimed to inform the viewing public of Mitchum's death and educate them regarding his impact on the arts."); *Hofheinz v. AMC Prods., Inc.*, 147 F. Supp. 2d 127, 137

11

Because ABC's use was transformative, this element—the 'heart of the inquiry' into fair use—weighs heavily in ABC's favor. And because the report is transformative, ABC's status as a commercial entity has little, if any relevance to the fair use inquiry. *Campbell*, 510 U.S. at 584, 114 S.Ct. at 1174; *Swatch Group Mgmt. Serv. V. Bloomberg, L.P.,* , 756 F.3d 73, 83 (2d Cir. 2014) (recognizing that "almost all" media enterprises are commercial and therefore assigning "relatively little weight" to this factor); *Blanch*, 467 F.3d at 254 (where the new work was substantially transformative, "[w]e therefore discount the secondary commercial nature of the use." (quotation and citation omitted)); *Castle Rock Ent'mnt v. Carol Pub. Group*, 150 F.3d 132, 142 (2d Cir. 1998) ("[We] do not give much weight to the fact that the secondary use was for commercial gain.").

### 2.  The Nature of the Copyrighted Work Is at Most Neutral.

The second factor in the fair use analysis is the nature of the copyrighted work. Courts consider "'(1) whether the work is expressive or creative, . . . with a greater leeway being allowed a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower.'" *Blanch*, 467 F.3d at 256 (quoting 2 Howard B. Abrams, *The Law of Copyright*, § 15:52 (2006)). If the "copyrighted work" claimed is the KeyiCam webpage and logo, it appears to include both creative and factual content. In any event, it was published on the website prior to ABC's use. *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003). This factor, on balance, weighs slightly in favor of fair use, or at most is neutral. *Id.*

---

(E.D.N.Y. 2001) (use of brief film clips as part of documentary film about the development of the monster movie genre was transformative); *Hofheinz v. Discovery Commc'ns, Inc.*, No. 00 Civ. 3802(HB), 2001 WL 1111970, at *4 (S.D.N.Y. Sept. 20, 2001) (use of clips from alien film in documentary about alien films was transformative); *Hofheinz v. A & E Television Networks, Inc.*, 146 F. Supp. 2d 442, 446-47 (S.D.N.Y.2001) *(*use of film clips in a biographical film to "enable[e] the viewer to understand the actor's modest beginnings in the film business" was transformative).

12

### 3. The Amount and Substantiality of the Portion Used Weighs in Favor of Fair Use.

The third factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107, also either weighs in favor of fair use here. This factor also considers "whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.'" *Cariou*, 714 F.3d at 710 (quoting *Blanch*, 467 F.3d at 257). The secondary use "'must be [permitted] to 'conjure up' at least enough of the original' to fulfill its transformative purpose." *Id.* (quoting *Campbell*, 510 U.S. at 588, 114 S.Ct. at 1176); *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114 (2d Cir. 1998). The brief view of the KeyiCam logo and webpage – roughly one second in a video that ran roughly 210 seconds long – is reasonable and consistent with the news report's purpose to inform viewers about various key duplications services. This factor weighs in favor of fair use. *See, e.g.*, *NXIM Corp.*, 364 F.3d at 481 (where the use was "reasonably necessary" "to support [defendant's] critical commentary", this factor favored fair use).

### 4. The Effect of the Use Upon the Market Weighs in Favor of Fair Use.

Finally, the fourth factor weighs in favor of fair use because the brief glimpse of the KeyiCam logo and website on ABC's news report does not compete with Plaintiff's market in key duplication services. As the Second Circuit stated in *Cariou,* "[w]e have made clear that 'our concern is . . . whether the secondary use *usurps* the market of the original work.'" 714 F.3d at 708 (quoting *Blanch*, 467 F.3d at 258). In other words, "the focus . . . is on whether defendants are offering a market substitute for the original." *NXIVM Corp.*, 364 F.3d at 481. Suffice it to say that the one second display of the webpage in the news report is hardly a "substitute" for Plaintiff's website or services. Where, as here, "Defendants have produced a transformative work that would otherwise qualify for fair use, and Defendant[s'] work does not

13

interfere with the market for the original, the fourth factor favors the [D]efendants as a matter of law. *Video-Cinema Films, Inc.*, 2001 WL 1518264, at *8 (citing *Leibovitz*, 137 F.3d at 116-17). Consequently, this fourth fair use factor weighs heavily in ABC's favor.

In sum, the statutory factors weigh in favor of ABC's fair use. Moreover, if a news organization cannot report about a company by providing something that briefly identifies the company to consumers, copyright holders could exercise a monopoly over the public's access to newsworthy information. Accordingly, the Plaintiff's copyright claim should be dismissed.

## CONCLUSION

For the foregoing reasons, ABC requests that the Court dismiss the Complaint, in its entirety, with prejudice.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ L. Danielle Toaltoan*

Nathan Siegel
L. Danielle Toaltoan
1251 Avenue of the Americas
21st Floor
New York, NY 10020
Tel: (212) 489-8230
nathansiegel@dwt.com
danielle.toaltoan@dwt.com
*Attorneys for Defendant ABC, Inc.*

14