UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CAESAR MANIGAULT, :

               Plaintiff, :

    -against- : **MEMORANDUM AND ORDER**

ABC Inc., : 17-CV-7375 (KNF)

              Defendant. :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Caesar Manigault ("Manigault") commenced this action against ABC, Inc. ("ABC") asserting the following claims: (1) "infringement of a unregistered trademark under Lanham Act federal law"; (2) "unfair competition under federal law"; (3) "false advertising under federal law"; (4) "deceptive acts and practices unlawful under New York state law"; (5) "false advertising under New York state law"; (6) "injury to business reputation and dilution under New York state law"; (7) "unfair competition under New York common law"; (8) "common law copyright infringement"; (9) "misappropriation under New York common law"; and (10) "fraudulent conveyance by defendants." Manigault alleges that he "owns KeyiCam unregistered Trademark, which KeyiCam is Software that takes a picture of a Key and provides the biting code to end user." He asserts that ABC is "in the business of marketing and promoting local to national services associated with Defendants' various entertainment franchises, or licensing others to do so, including mobile apps and technological services which are distributed and sold in interstate commerce." Manigault alleges that "6ABC has been broadcasting programs to viewers in the Delaware Valley, an area covering Southeastern Pennsylvania, Delaware and Southern New Jersey, currently representing over 8 million people." According to Manigault,

1

ABC infringed his copyright and trademark rights "by showing a picture of KeyiCam website whereas KeyiCam logo was displayed that required permission to use" and when ABC broadcasted KeyiCam "on ABC news dated, March 16, 2015 on the video timestamp 2:23 from Reporter Nydia Ham," without permission. ABC used KeyiCam "in connection with their News 'Locked out? Smartphone app might be key to solving problems' and 'KeyMe addresses security concerns of key duplication.'" "ABC Inc advertised on their [sic] website that . . . KeyMe isn't the only game in town, though; there's also Keys Duplicated and KeyiCam." Manigault alleges that "KeyiCam appeared in ABC Inc advertisements" without "any copyright or trademark licensing." He asserts that "KeyiCam is mixed in the broadcasted commercial in ABC News with other similar Startups such as Keyme and Keys Duplicated that offer similar goods and services," and ABC's use of the marks similar to KeyiCam "is likely to cause consumers mistakenly to believe that the [goods identical or similar to KeyiCam] emanate from or are otherwise associated with KeyiCam." Manigault alleges that ABC's viewers are "lured away from KeyiCam to give business to Keyme" and "Internet traffic lost to KeyiCam business" resulted from "mixing Keyme with KeyiCam." Manigault asserts that ABC used the KeyiCam mark "to identify and attract attention to [ABC's] goods and business and to interfere with and disrupt the business and operations of KeyiCam."

Before the Court is ABC's motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Manigault opposes the motion.

## DEFENDANT'S CONTENTIONS

ABC asserts that it "owns local television station WPVl-TV in Philadelphia, also commonly referred to as 6abc, which broadcasted a consumer news report reviewing the pros and cons of services that offer the ability to scan keys so that duplicates can then be mailed to the

consumers." ABC contends that Manigault's claim "arises from a consumer news segment that was broadcast on [its 6abc's] program" reported by journalist Nydia Ha, which "lasted roughly three and a half minutes." According to ABC, the segment reported by its journalist "reviewed the phenomena of smartphone applications . . . that allow consumers to create and store virtual copies of their keys – digital copies which can then be used to order physical duplicates of the keys if they are lost." "The report focused on one service called KeyMe," explained how it works and "mentioned the names of the other two services, a screenshot from each business's web site was displayed on the screen for about a second each." ABC contends that it "also posted an article on [its 6abc] website summarizing the news report," which included "hyperlinks to the websites for each of the companies mentioned in the report."

ABC asserts that the complaint must be dismissed because "it is premised on the assertion that the ABC news report is a commercial advertisement for key duplication services. It is not, and so the Complaint must be dismissed as a matter of law."

ABC contends that Manigault is required "to plausibly plead that consumers would likely be confused about whether Plaintiff endorsed or sponsored the news report" and the complaint "fails to plausibly plead a likelihood of confusion." Furthermore, "ABC's brief reference to Plaintiff's product for purposes of reporting about it constitutes nominative fair use, and in any event is protected by the First Amendment." ABC contends that its "news segment" at issue was "*reporting about* the phenomena of key duplication services – including the drawbacks," and "KeyiCam is one of several services that are briefly referenced to inform consumers about the range of the products that are available." Thus, "[t]here is no plausible likelihood that consumers would be confused that Plaintiff sponsored, endorsed, or was otherwise associated with the news report."

3

ABC asserts that the trademark claims are barred by the First Amendment because: (i) "ABC's use of the KeyiCam logo had 'artistic relevance' to the report, since the logo and website illustrated an example of the key duplication services that was the very subject of the consumer news segment"; and (ii) "[n]othing in the news report explicitly suggested to viewers that it was prepared or authorized by Plaintiff." Moreover, the false advertising claims are barred because the Lanham Act applies only to commercial speech and "[n]ews reports are not commercial speech."

ABC contends that the state-law causes of action "for unfair competition, dilution, trademark infringement and misappropriation" fail for the same reasons as the federal claims and it is not clear from the allegations what "photographs, artworks or written works" are purportedly registered; however, "whatever they might be ABC's one-second display of a portion of a web page in the context of its news report is clearly a protected fair use." ABC asserts that a state-law unfair competition cause of action "failed to adequately allege bad faith on ABC's part," and the complaint is devoid of allegations that ABC engaged in an act or practice that is deceptive or misleading in a material way. Moreover, Manigault "cannot support a claim for a 'fraudulent conveyance' because Plaintiff is not a creditor of ABC pursuant to N.Y. Debtor and Creditor Law § 276."

ABC asserts that Manigault "fails to state a claim for copyright infringement" because the complaint "remains wholly devoid of merit. It is not clear what 'photographs, artworks and written works' . . . are purportedly registered, but whatever they might be ABC's one –second display of a portion of a web page in the context of its news report is clearly a protected fair use." ABC contends that the purpose of displaying any allegedly copyrighted material was "'news reporting,' which is explicitly favored under the Copyright Act," and the brief display of

KeyiCam logo and website along with other brands of key duplication services to inform consumers about various services available to them is "transformative," making "ABC's status as a commercial entity" irrelevant. Moreover, "[i]f the 'copyrighted work' claimed is the KeyiCam webpage and logo, it appears to include both creative and factual content" and "it was published on the website prior to ABC's use." ABC asserts that "the amount and substantiality of the portion used weighs in favor of fair use," "roughly one second in a video that ran roughly 210 seconds long." ABC maintains that the effect of its use of the alleged copyrighted work upon the market weighs in its favor because "the brief glimpse of the KeyiCam logo and website on ABC's news report does not compete with Plaintiff's market in key duplication services." According to ABC, "[w]here, as here, 'Defendants have produced a transformative work that would otherwise qualify for fair use, and Defendant[s'] work does not interfere with the market for the original, the fourth factor favors the [D]efendants as a matter of law.'"

## PLAINTIFF'S CONTENTIONS

Manigault contends that he "alleged specific photographic drawing owned by Plaintiff that Defendants copied to the 6ABC.com website. Am Compl., Exhs. G, H, & I" and "provided registered copyrighted work at the time the Amended opposition [to the defendant's first request for an extension of time to respond to the complaint] was filed." He asserts that he identified "the photographic drawing work attached as Exhibit 1 to the Complaint." Manigault asserts that he "adequately alleged ownership" because he "attached one exhibit listing the specific work infringed, the owners of those works, and the copyright registration number associated with them. Exhibit 1 contains works belonging to Plaintiff 'Caesar Manigault.'" He maintains that he "provided registered copyrighted work at the time the Amended opposition was filed" to ABC's motion to extend time to respond to the complaint. According to Manigault, rather than "using

5

small amounts of KEYICAM Copyrighted derivative Work," which would be fair use, "ABC displayed the entire KEYICAM drawing, which is not 'FAIR USE,' and is not protected by fair use." Manigault asserts that "Defendant's false information on Orders on Motions are matters of fact not appropriate for resolution in a motion to dismiss" and he identified "a custom and policy that shows violation on Orders and Motions, which Defendants do not even dispute opposition filed November 9, 2017." According to Manigault, "Defendant provided false information on Orders and Motions ignoring opposition filed by Plaintiff November 09, 2017 with no reply from Defendant 'ABC.'"

## LEGAL STANDARD

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

"Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 191 (2d Cir. 2010) (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). On a motion pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true and all reasonable inferences are drawn in the plaintiff's favor. See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 655 F.3d 136, 141 (2d Cir. 2011).

6

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

The owner of copyright under the Copyright Act of 1976

has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies of phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies of phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

17 U.S.C. § 107.

### APPLICATION OF LEGAL STANDARD

*"[T]he ABC report at issue is a news report"*

ABC contends that the complaint "is premised on the assertion that the ABC news report is a commercial advertisement for key duplication services. It is not, and so the Complaint must

be dismissed as a matter of law." This contention is meritless. Manigault's factual allegations are taken as true on a motion to dismiss, see Interpharm, Inc., 655 F.3d at 141, including that: (i) "KeyiCam appeared in ABC Inc advertisements, which ABC has over 8 Million traffic visitors since it was first publicized March 16, 2015 at 6ABC.com"; (ii) "ABC Inc advertised on their [sic] website that . . . KeyMe isn't the only game in town, though; there's also Keys Duplicated and KeyiCam"; and (iii) "KeyiCam is mixed in the broadcasted commercial in ABC News with other similar Startups such as Keyme and Keys Duplicated that offer similar goods and services." Although evidence may demonstrate, ultimately, that "the ABC news report" at issue is **not** "a commercial advertisement for key duplication services," ABC's denial, in its memorandum of law supporting the motion to dismiss, of Manigault's factual assertions is not a valid basis upon which the complaint may be dismissed.

*Trademark Infringement*

ABC contends that the trademark infringement claims must be dismissed because: (a) "[t]here is no plausible likelihood that consumers would be confused that Plaintiff sponsored, endorsed, or was otherwise associated with the news report"; and (b) "ABC's brief reference to Plaintiff's product for purposes of reporting about it constitutes nominative fair use, and in any event is protected by the First Amendment." Whether Manigault will be able to establish the existence of a "plausible likelihood that consumers would be confused" goes to the merits of his trademark infringement claims. Similarly, whether the doctrine of nominative fair use applies, see Int'l Info. Sys. Sec. Certification Consortium v. Sec. University, LLC, 823 F.3d 153, 165 (2d Cir. 2016) ("The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation."), or the First

8

Amendment bars Manigault's claims, are merits issues to be determined on a summary judgment motion or at trial.

Manigault asserts that "KeyiCam is mixed in the broadcasted commercial in ABC News with other similar Startups such as Keyme and Keys Duplicated that offer similar goods and services," and ABC's use of marks similar to KeyiCam "is likely to cause consumers mistakenly to believe that the [goods identical or similar to KeyiCam] emanate from or are otherwise associated with KeyiCam." Manigault alleges that ABC's viewers are "'lured away from KeyiCam to give business to Keyme" and "Internet traffic lost to [the] KeyiCam business" resulted from "mixing Keyme with KeyiCam." The trademark infringement claims contain sufficient factual content that, accepted as true, state a claim for relief that is facially plausible. Accordingly, granting a motion to dismiss Manigault's trademark infringement claims, including New York causes of action for false advertising, injury to business reputation and dilution, unfair competition and misappropriation, is not warranted.

*Copyright Infringement*

ABC contends that Manigault "fails to state a claim for copyright infringement" because the complaint "remains wholly devoid of merit. It is not clear what 'photographs, artworks and written works' . . . are purportedly registered, but whatever they might be ABC's one-second display of a portion of a web page in the context of its news report is clearly a protected fair use." The assertion that the complaint is "wholly devoid of merit" is not a basis upon which the complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ABC's argument that "whatever" might be the works that are "purportedly registered" by Manigault, ABC's "one-second display of a portion of a web page in the context of its news report is clearly a protected fair use" goes to the merits of the copyright claim and is determined

9

properly on a summary judgment motion or at trial, not on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of civil Procedure.

However, ABC is correct that the complaint fails to identify the copyrighted work subject to Manigault's copyright claim because Manigault fails to plead ownership of a valid copyright in any work. Manigault contends that he "alleged specific photographic drawing owned by Plaintiff that Defendants copied to the 6ABC.com website. Am. Compl., Exhs. G, H, & I" and "provided registered copyrighted work at the time the Amended opposition [to the defendant's first request for an extension of time to respond to the complaint] was filed." Assuming that by "Am. Compl." stands for amended complaint, no such document has been filed in this action. Manigault also asserts that he identified "the photographic drawing work attached as Exhibit 1 to the Complaint." No Exhibit 1 is attached to the complaint. Moreover, Manigault identified only Exhibits B, C, D, E and G to his complaint, and none of the attachments to his complaint identifies the registered work subject to Manigault's copyright claim. Manigault asserts that he "provided registered copyrighted work at the time the Amended opposition was filed" to ABC's motion to extend time to respond to the complaint, and he also attached as Exhibit 3 to his "Memorandum of Law in Support of KeyiCam Motion for Final Judgment on Liability and Inapplicability of the Digital Millennium Copyright Act and 'Fair Use' Safe Harbor Defense" filed on the same date as the motion to dismiss, a certificate of registration from the United States Copyright Office. See Docket Entry No. 23, page 68. However, filing of documents subsequent to the complaint does not cure the complaint's deficiency, namely, the failure to plead a valid copyright. Accordingly, dismissing Manigault's copyright infringement claim is warranted.

However, Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend its pleading with "the court's leave," which should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). ABC did not assert that amending the complaint would cause it any prejudice or undue delay, or that Manigault acted in bad faith or with a dilatory motive. Thus, granting leave to amend the complaint is warranted.

### *Deceptive Acts and Practices under New York General Business Law § 349*

"Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." New York General Business Law § 349(a). The complaint is devoid of any allegations that ABC engaged in deceptive acts or practices. Thus, Manigault's fourth cause of action for deceptive acts and practices under New York law must be dismissed.

### *Fraudulent Conveyance under New York Debtor and Creditor Law §§ 276 and 277*

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." New York Debtor and Creditor Law § 276.

> Every conveyance of partnership property and every partnership obligation incurred when the partnership is or will be thereby rendered insolvent, is fraudulent as to partnership creditors, if the conveyance is made or obligation is incurred, a. To a partner, whether with or without a promise by him to pay partnership debts,

11

or b. To a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners.

New York Debtor and Creditor Law § 277.

Other than reciting New York law, the complaint is devoid of factual allegations concerning any conveyance made by ABC: (i) with actual intent to defraud present or future creditors; or (ii) of any partnership property. Accordingly, Manigault's tenth cause of action for fraudulent conveyance, under New York law, must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss, Docket Entry No. 22, is granted, in part, and denied, in part. The plaintiff's: (a) fourth cause of action, "Deceptive Acts and Practices Unlawful under New York Law," and (b) tenth cause of action, "Fraudulent Conveyance by Defendants," are dismissed. The plaintiff shall, on or before April 26, 2018, amend his complaint solely to correct the above-explained deficient copyright infringement claim and to remove the causes of action dismissed through this order. The defendant shall, on or before May 10, 2018, serve and file its responsive pleading or a motion. The plaintiff is encouraged to contact the NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York to seek assistance with this case, by calling (212) 659-6190, on any weekday, between 10:00 a.m. and 4:00 p.m.

Dated: New York, New York
April 12, 2018

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE