USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CAESAR MANIGAULT,

                     Plaintiff,

    -against-

ABC Inc.,

                     Defendant.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

17-CV-7375 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Caesar Manigault ("Manigault") commenced this action against ABC, Inc. ("ABC") asserting the following claims: (1) "infringement of a[n] unregistered trademark under Lanham Act federal law"; (2) "unfair competition under federal law"; (3) "false advertising under federal law"; (4) "false advertising under New York state law"; (5) "injury to business reputation and dilution under New York state law"; (6) "unfair competition under New York common law"; (7) "common law copyright infringement"; and (8) "misappropriation under New York common law." Manigault alleges that he "owns KeyiCam unregistered Trademark, which KeyiCam is Software that takes a picture of a Key and provides the biting code to end user." He asserts that ABC infringed his copyright and trademark rights "by showing a picture of KeyiCam website whereas KeyiCam logo was displayed that required permission to use" when ABC broadcasted KeyiCam logo "on ABC news dated, March 16, 2015 on the video timestamp 2:23 from Reporter Nydia Ham," without permission. Before the Court is ABC's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff opposes the motion.

1

## DEFENDANT'S CONTENTIONS

ABC contends that "the ABC news report did not violate the Lanham Act or any of Manigault's related state-law theories," because: (1) "the 6abc news report does not cause consumer confusion"; (2) "the news report is not commercial speech for purpose of false advertising claims"; (3) Manigault's "Lanham Act claims are barred by the First Amendment"; and (4) Manigault's "state law claims also fail for the same reasons." ABC contends that "no reasonable juror could find that the viewers who tuned into WPVI's evening news program, or who watched the News Report on 6abc.com, would likely be confused that KeyiCam sponsored, endorsed, or was otherwise associated with ABC" and the News Report was part of a news program identified on the screen as "consumer news." ABC asserts that no "common law" copyright cause of action exists and, if Manigault's claim is construed as a federal copyright claim, it lacks merit because ABC "news report's brief display of a logo is a fair use." ABC contends that, "whatever copyrighted material might have been displayed was for purposes of 'news reporting,' which is favored under the Copyright Act. Moreover, ABC's news report "briefly displayed Plaintiff's work for a substantially different purpose than the original context" of "promot[ing] a certain brand of key duplication service," namely, "to inform consumers about various services available to them." Since "ABC's use was transformative," ABC's "status as a for-profit entity has little, if any, relevance to the fair use inquiry." According to ABC, "the nature of the copyrighted work is at most neutral," given that the KeyiCam logo includes both creative and factual content and the logo was published on Manigault's web site prior to ABC's use. ABC asserts that the very brief view of the KeyiCam logo and webpage, about one second in a video that was 210 seconds long, is reasonable and "consistent with the news report's purpose to inform viewers about various key duplication services." ABC's news report does not

compete in a market for the KeyiCam logo. ABC contends that Manigault failed to state a claim under the Digital Millennium Copyright Act ("DMCA"), because that statute does not apply to "allegedly infringing material that is posted directly by a defendant website," which is what the plaintiff asserts in this action. In support of the summary judgment motion, ABC submitted a declaration by P. Rob Royal ("Royal"), "an Executive Producer for WPVI in Philadelphia, PA, a/k/a 6abc," a licensee of ABC with: (1) Exhibit A, "[a] true and correct copy of the news segment as it aired on television"; (2) Exhibit B, "[a] true copy of the news segment as it appears on 6abc.com, which at the time this copy was made was preceded by a 30-second commercial"; and (3) Exhibit C, "a[] true and accurate screenshot of the Website Article" posted on 6abc.com, which "included hyperlinks to the websites of each of the companies mentioned in the report."

### PLAINTIFF'S CONTENTIONS

Manigault asserts that ABC's motion is "supported solely by irrelevant or inadmissible evidence," referencing ABC's previously filed motion to dismiss. In his opposition to the instant motion, Manigault makes numerous factual assertions and legal conclusions, discussing mostly the merits of the previously decided motions to dismiss and for a temporary restraining order. Manigault asserts that the "registered drawings" were not mentioned in ABC's motion, and his "copyrighted and unregistered Mark Diagram 1 and ABC Mark Diagram 2 that causes likelihood of confusion as marks with blue pillars affixed similar and upside down key with similar power button that's above the upside down key are similar." Manigault contends that he "discovered Disney Interactive provides sites that are branded such as ABC that is a Disney owned website" and, since "ABC is Disney Branded," Disney's Term of Use applies and "content created by ABC on an ABC website" is subject to DMCA. Moreover, the "Supreme Court held that the defendants [sic] knowledge that the work it reproduced was obtained through theft was a factor

in weighing against fair use." According to Manigault, a "story on ABC about former Justice David Souter's webpage that contains Rebecca Tushnet speaking for ABC webpage disappeared mysteriously" since "plaintiff discovered Rebecca Tushnet name speaking for ABC." Moreover, Manigault "discovered ABC also has a satellite television company that sells satellite television service contracts," namely, "Disney – ABC Television Group," making ABC "liable under Satellite Home Improvement Viewers Act." Manigault contends that the "Supreme Court held that the [defendant's] knowledge that work it reproduced was obtained through theft" is "a factor weighing against fair use."

## DEFENDANT'S REPLY

ABC contends that Manigault offered "no evidence to dispute that the 6abc story is a news report, and not an advertisement for key duplication services or anything else." Moreover, he offers no evidence to dispute ABC's First Amendment defenses that his state-law claims are barred for the same reasons as his federal claims. ABC asserts that Manigault's allegations of "theft" by other companies and that ABC is owned by Walt Disney Company are immaterial to this case as "it does not matter who is a 'service provider' or a 'user' because DMCA does not provide a cause of action against either when allegedly infringing material is not removed." Furthermore, the Satellite Home Viewing Act "has no application to the allegation of copyright infringement in this case." Manigault's "contention that a news report in which Professor Tushnet is interviewed has 'disappeared'" is irrelevant and inaccurate.

## LEGAL STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). "[T]he substantive law will identify which facts are material. Only

4

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255, 106 S. Ct. at 2513. In deciding a summary judgment motion, "[t]here is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S. Ct. at 2511. Thus, summary judgment is improper "[i]f reasonable minds could differ as to the import of the evidence." Id.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> Fed. R. Civ. P. 56(c)(1).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to

5

cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To prevail on trademark infringement and unfair competition claims with respect to unregistered trademarks under Section 43(a) (1) of the Lanham Act, a plaintiff must show that: (1) the plaintiff has a valid mark entitled to protection under the Lanham Act; (2) the defendant used the mark in commerce, in connection with the sale or advertising of any goods or services, without the plaintiff's consent; and (3) "defendant's use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" 1-800 Contacts, Inc. v. Whenu.com, Inc. 414 F.3d 400, 407 (2d Cir. 2005). "[S]atisfaction of the likelihood-of-confusion standard requires a 'probability of confusion, not a mere possibility.'" Guthrie Healthcare Sys. v. Contextmedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016) (citation omitted).

"[A] defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102-03 (2d Cir. 2010). "In order to assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013).

6

> It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law "mirror the Lanham Act claims." "The heart of a successful claim based upon [both] . . . the Lanham Act . . . and [the] common law [causes of action] . . . is the showing of a likelihood of confusion as to the source or sponsorship of defendant's products." . . . However, unlike its federal counterpart, a viable common law claim for unfair competition requires an additional showing of bad faith.
>
> Lorillard Tobacco Co. v. Jamelis Grocery, Inc., 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (internal citations omitted).

"[T]he principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has . . . often been implemented in [New York] courts" as one theory of common-law New York unfair competition cause of action. ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 477, 850 N.Y.S.2d 366, 372 (2007) (citation omitted).

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." Church & Dwight v. SPD Swiss Precision Diagnostics, 843 F.3d 48, 65 (2d Cir. 2016). To constitute commercial advertising or promotion for the purpose of the Lanham Act, statements must be: (1) commercial speech (2) "for the purpose of influencing consumers to buy defendant's goods or services"; and (3) "disseminated sufficiently to the relevant purchasing public." Boule v. Hutton, 328 F.3d 84, 90-91 (2d Cir. 2003) (citation omitted). "The 'core notion' of commercial speech is that 'which does no more than propose a commercial transaction.'" IMS Health Inc. v. Sorrell, 630 F.3d 263, 274 (2d Cir. 2010) (citation omitted). "To successfully assert a claim under General Business Law . . . § 350, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result

7

of the allegedly deceptive act or practice.'" Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 452 (2012) (citation omitted).

To prevail on a cause of action for injury to business reputation and dilution under New York General Business Law § 360-l, a plaintiff must show "(1) that it 'possess[es] a strong mark—one which has a distinctive quality or has acquired secondary meaning' such that 'the trade name has become so associated in the public's mind with the [petitioner] that it identifies goods sold by that entity as distinguished from goods sold by others,' and (2) a 'likelihood of dilution' by 'either blurring or tarnishment.'" Fireman's Ass'n of State of N.Y. v. French American Sch. of N.Y., 41 A.D.3d 925, 928, 839 N.Y.S.2d 238, 241-42 (App. Div. 3rd Dep't 2007) (citations omitted). "Blurring occurs 'where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'" N.Y. Stock Exch. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550, 558 (2d Cir. 2002) (citation omitted). "'Tarnishment' generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 43 (2d Cir. 1994).

To prevail on a copyright infringement claim, a plaintiff must establish: (1) "ownership of a valid copyright"; and (2) "copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991). No state-law copyright infringement cause of action exists. See 17 U.S.C. § 301(a). The copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment [and] news reporting . . . is not an infringement of copyright." 17 U.S.C. § 107. In determining fair use, courts consider: (1) "the purpose and character of the use, including whether such use is

of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

## APPLICATION OF LEGAL STANDARD

### *Undisputed Facts*

WPVI-TV, commonly referred to as 6abc, is ABC's local television station covering Philadelphia, Pennsylvania, New Jersey and Delaware. In February 2015, WPVI broadcasted a news report about key duplication services, reported by Nydia Han on its 6abc Action News television program. The news reporter explained that a virtual copy of a key can be made and stored in the telephone application from which a real key may be produced at a kiosk or any hardware store or mailed to the consumer. The news report examined a smartphone application for a key duplication service called KeyMe, explained how KeyMe works and showed several tests performed to assess how well KeyMe works with two positive and one negative result. The news report also showed materials published by KeyMe. The news reporter stated: "KeyMe isn't the only game in town, though; there's also Keys Duplicated and KeyiCam." While the news reporter mentioned the names Key Duplicated and KeyiCam, a screenshot from each business's website was displayed for about one second. The news reporter explained that some security experts and traditional locksmiths have safety concerns with key duplication services offered via smartphone applications. The news report showed an interview with a locksmith who talked about a safety risk. In the news report, the brief display of a page from the websites of Key Duplicated and KeyiCam and the display of materials distributed by the main service that was discussed, KeyMe, were included by ABC to help viewers distinguish the three key duplication services. The news report was accompanied by a text version that included

hyperlinks to the websites of each of the companies mentioned in the news report. The text version was entitled "Locked out? Smartphone app might be key to solving problem."

On September 6, 2011, the United States Copyright Office issued a certificate of registration number TXu 1-774-038 for a title of work "KeyiCam," previous or alternative title "KeyiCam Virtual Key Duplication," indicating that: (i) author Ceasar Gerard Manigault created "text, editing" and work was made for hire; and (ii) author Chris Norman created "photograph(s), artwork" and work was not made for hire.

***Trademark Infringement and Unfair Competition (Claims One, Two and Six)***

It is undisputed that ABC used the KeyiCam mark, when it informed consumers that KeyMe is not the only key duplication service in existence, to distinguish KeyMe from two other key duplication services in existence: Key Duplicated and KeyiCam. ABC's brief use of the KeyiCam mark in its news report did not suggest in any way that KeyiCam: (i) is affiliated, connected or associated with ABC; (ii) originates from ABC; or (iii) is sponsored or approved by ABC. No evidence exists that ABC acted in bad faith when it used the KeyiCam mark in its news report. Since liability for trademark infringement and unfair competition requires proof of the likelihood of confusion, see 15 U.S.C. § 1125(a)(1)(A), and the undisputed evidence shows that ABC's use of the KeyiCam mark was not likely to cause confusion as to the affiliation, connection, association of KeyiCam with ABC, or the origin, sponsorship or approval of KeyiCam services by ABC, granting summary judgment in favor of ABC on the trademark infringement and unfair competition claims, namely, claims one, two and six in the amended complaint, is warranted.

*False Advertising (Claims Three and Four)*

It is undisputed that ABC used the mark and mentioned KeyiCam services as part of ABC's consumer news report about the KeyMe smartphone application. No evidence exists in the record showing that ABC engaged in consumer-oriented conduct that is materially misleading. ABC's brief use of the KeyiCam mark in its reporting about the existence of KeyiCam services, namely, "KeyMe isn't the only game in town, there's also Keys Duplicated and KeyiCam," does not constitute commercial speech because it: (a) did not propose any commercial transaction; and (b) was not made for the purpose of inducing consumers to purchase KeyiCam services. Since liability for false advertising under the Lanham Act requires proof of "a commercial advertising or promotion," see 15 U.S.C. § 1125(a)(1)(B), and the undisputed evidence shows that neither ABC's use of the KeyiCam mark nor its mention of the existence of KeyiCam services constitutes commercial advertising or promotion, granting summary judgment in favor of ABC on the false advertising claims, namely, claims three and four, is warranted.

*Injury To Business Reputation and Dilution (Claim Five)*

No evidence exists in the record tending to establish the likelihood of dilution by blurring or tarnishment. It is undisputed that ABC did not use the KeyiCam mark to identify its own services and that it used the KeyiCam logo while mentioning KeyiCam's existence for the purpose of informing consumers that key duplication services other than KeyMe exist. Moreover, it is undisputed that the news report did not portray the KeyiCam logo and KeyiCam's services; the news report only mentioned KeyiCam's existence while reporting on the KeyMe key duplication service. It is undisputed that the news report showed two positive and one negative result of the reporter's testing of KeyMe; thus, no reasonable finder of fact could conclude that ABC used the KeyiCam logo "in an unwholesome or unsavory context likely to

evoke unflattering thoughts about" KeyiCam's services. Accordingly, granting summary judgment in ABC's favor on the injury to business reputation and dilution cause of action, claim five, is warranted.

*Copyright Infringement (Claim Seven)*

It is undisputed that the purpose of ABC's use of Manigault's copyrighted work, the KeyiCam logo, was news reporting and that purpose is specifically exempted from copyright infringement by statute. See 17 U.S.C. § 107. "[T]here is a strong presumption that factor one [of the fair use factors] favors the defendant if the allegedly infringing work fits the description of uses described in section 107." Wright v. Warner Books, Inc., 953 F.2d 731, 736 (2d Cir. 1991). Thus, the purpose and character of the use factor in this circumstance, favors a finding of fair use by ABC.

The KeyiCam logo contains a drawing and the name of the service; thus, it is creative and factual in nature. The KeyiCam logo was published on Manigault's website prior to ABC's use. The Court finds that this factor is neutral.

The amount and substantiality of the portion used in relation to the copyrighted work as a whole favors a fair use finding because the extremely brief showing of the KeyiCam logo and webpage, approximately one second, is reasonable and consistent with the news report's purpose, which was to inform viewers about the existence of key duplication services other than KeyMe. The effect of the use upon the potential market for, or value of, the copyrighted work factor also favors a finding of fair use by ABC because the brief glimpse of the KeyiCam logo in the news report does not compete with and has no effect on any market for the KeyiCam logo. The Court finds that ABC's brief use of the KeyiCam logo was fair use. Thus, granting

summary judgment in favor of ABC on the copyright infringement claim, claim number seven, is warranted.

### *Misappropriation (Claim Eight)*

New York recognizes misappropriation as one theory of a common-law unfair competition cause of action. See ITC Ltd., 9 N.Y.3d at 477, 850 N.Y.S.2d at 372. Since summary judgment is warranted in favor of ABC on the New York unfair competition cause of action, for the same reasons as explained above, summary judgment is also warranted in favor of ABC on the misappropriation cause of action, claim eight.

### CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment, Docket Entry No. 62, is granted.

Dated: New York, New York  
October 10, 2018

SO ORDERED:

*(signature)*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE